**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**BARBARA HAINES**
**23 Sayre Street**
**Summit, New Jersey 07901,**

**DOROTHY LOUVEN**
**2503 Mount Hope Road**
**Otisville, NY 10963,**

**KIM SPEARMAN**
**6 Melbourne Lane**
**Willingboro, NJ 08046,**

**Individually and on behalf of all others similarly situated,**

**Plaintiffs,**

**v.** **CIVIL ACTION NO. ________________**

**THE GENERAL PENSION PLAN OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS,**
**CHRISTOPHER J. HANLEY**
**RODGER KAMINSKA**
**WILLIAM T. CAGNEY**
**KENNETH ESTABROOKS**
**ROBERT T. HEENAN**
**BRIAN E. HICKEY**
**MARK HOLLIDAY**
**JAMES T. KUNZ**
**LOUIS G. RASETTA**
**BRUCE TAVIN**
**LIONEL J. GINDORF**
**LARRY B. JOHNSON**
**ART VIAT**
**JAMES O'GARY**
**PETER BABIN III**
**SAM T. HART**
**ALAN B. TARPLEY**
**MICHAEL J. HACH**
**ALLEN BOWERING**
**JAN PELROY**
**BRUCE ASHMAN**

**RAYMOND POUPORE**
**T. D. ARCHER**
**ROBERT BOUSQUET**
**JOSEPH F. KENNEDY**
**RUSSELL CONLON**
**CLAYTON WILSON**
**E. A. MAHANNAH**
**V. H. WILLIAMS**
**KEITH SOBER**
**WALTER RYAN**
**MICHAEL PARR**
**FRANK HANLEY**
**FRANK T. POLSAK**
**ROBERT F. PUERINGER**
**NORMAN O. MAHNKE**

**Defendants.**

**COMPLAINT**

1. Effective May 1976, the International Union of Operating Engineers General Pension Plan (the "Plan") was amended to permit employees of Related Organizations to participate in the Plan.

2. As with any employer participating in the Plan, the Plan required that all employees of a Related Organization participate in the Plan and that the Related Organization make contributions to the Plan on their behalf.

3. The International Union of Operating Engineers ("IOUE") Local 825 Training Fund (the "Training Fund") is a Related Organization.

4. At some time between the May 1976 amendment and 1980, the Board of Trustees for the Plan ("Trustees") became aware that the Training Fund was contributing on behalf of some but not all of its employees, and that the majority of its employees were not participants in the Plan.

5. On January 4, 1980, the then-Chairman of the Trustees, Frank Hanley, wrote to the Business Manager of IOUE Local 825, Patrick Campbell, explaining that all full time employees of the Training Fund had to be included in the Plan, or all employees of the Training Fund would be excluded from participation in the Plan. Hanley added that, pursuant to the Plan, employees who were covered by a collective bargaining agreement negotiated by another union could be excluded from the Plan.

6. On March 6, 1980, the Trustees executed a Participation Agreement with the Training Fund. Although the Participation Agreement was effective March 1, 1980, the Plan and the Trustees gave service and vesting credit to certain employees on behalf of whom contributions had been made between 1976 and 1980.

7. In July 1979, Campbell and John J. Pierson, then-President of Local 825, executed a fraudulent collective bargaining agreement, supposedly effective July 1, 1978, to exclude many employees of the Training Fund from participating in the Plan. The bogus agreement was executed only by officers of Local 825 and the Training Fund, not by another union.

8. Based on this bogus CBA, the majority of employees of the Training Fund were denied the right to participate in the Plan.

9. Plaintiffs Haines, Loeven, and Spearman (the "Plaintiffs") are spouses of deceased employees of the Training Fund. The deceased spouses, like all but a handful of Training Fund employees, were never told that they were participants in the General Pension Plan and no contributions were made on their behalf.

10. Plaintiffs therefore bring this class action lawsuit on behalf of themselves and all other similarly situated full time salaried officers and employees of the Training Fund and any

surviving spouses or heirs under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132, to recover the benefits to which they are entitled as General Pension Plan participants.

**Jurisdiction and Venue**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132.

**Parties**

**Plaintiffs**

12. Plaintiff Barbara Haines is the widow of Emerson Haines, a full time salaried employee of the Training Fund from the early 1970s until his death at age 53 in 1992.

13. Plaintiff Dorothy Loeven is the widow of Edward Loeven, a full time salaried employee of the Training Fund from 1980 through June of 1994. He died on July 30, 1999 at age 71.

14. Plaintiff Kim Spearman is the widow of Robert Spearman, a full time salaried employee of the Training Fund from 1992 through 1997. He died on September 13, 2009 at age 51.

15. All Plaintiffs exhausted the Plan's internal claims procedures.

**Defendants**

16. Defendant the General Pension Plan of the International Union of Operating Engineers (the "Plan") is an ERISA plan with a plan sponsor and administrator located in Washington, D.C. that covers full-time salaried officers and employees of local unions affiliated with the IUOE or related organizations that have met requirements for participating in the Plan.

17. The Board of Trustees for the Plan are the Named Fiduciary and Plan Administrator for the Plan. The following individuals have served on the Board of Trustees during the period relevant to this action and are named as Defendants:

18. Christopher J. Hanley, as Chairman;

19. Rodger Kaminska;

20. William T. Cagney;

21. Kenneth Estabrooks;

22. Robert T. Heenan;

23. Brian E. Hickey;

24. Mark Holliday;

25. James T. Kunz;

26. Louis G. Rasetta;

27. Bruce Tavin;

28. Lionel J. Gindorf, as Chairman;

29. Larry B. Johnson;

30. Art Viat;

31. James O'Gary;

32. Peter Babin III;

33. Sam T. Hart;

34. Alan B. Tarpley;

35. Michael J. Hach;

36. Allen Bowering;

37. Jan Pelroy;

38. Bruce Ashman;

39. Raymond Poupore;

40. T. D. Archer;

41. Robert Bousquet;

42. Joseph F. Kennedy;

43. Russell T. Conlon, as Chairman;

44. Clayton F. Wilson;

45. E. A. Mahannah;

46. V. H. Williams;

47. Keith Sober;

48. Walter J. Ryan;

49. Michael L. Parr;

50. Frank Hanley, as Chairman;

51. Frank T. Polsak;

52. Robert F. Pueringer;

53. Norman O. Mahnke;

**Full Time Salaried Officers and Employees of the Training Fund Are Plan Participants**

54. IUOE Local 825 represents thousands of operating engineers in the state of New Jersey and certain counties in New York.

55. The Training Fund was established to provide apprenticeship training as well as retraining for operating engineers. The deceased spouses of the Plaintiffs worked for the Training Fund.

56. The Training Fund, as a jointly administered apprenticeship program to which Local 825 is a party, is a "Related Organization" as that term is defined in the Plan Document. As such, the Training Fund "may participate in the Fund as participating Employer."

57. Per the terms of the controlling Plan document, all full time salaried officers and employees are Plan participants upon whose behalf the Training Fund shall make contributions.

58. Beginning in March of 1976, some Training Fund employees were permitted to participate in the Plan. Both employer and employee contributions were made on their behalf.

59. The deceased spouse of Plaintiff Haines was employed by the Training Fund prior to March of 1980, but was not permitted to participate in the plan.

60. In a January 4, 1980 letter, the then-Chairman of the Plan Trustees, Frank Hanley, informed the Training Fund that all full time employees of the Training Fund had to be included in the Plan or, effective March 1, 1980 all employees of the Training Fund would be excluded from participation in the Plan

61. Effective March 1, 1980, the Operating Engineers Local 825 Fund Service Facilities, which includes the Training Fund, entered into a participation agreement for Related Organizations with the Plan.

62. Following the March 1980 participation agreement, the spouses of Plaintiffs Haines, Loeven, and Spearman, like the majority of Training Fund employees over the following decades, were never told of their right to participate in the Plan.

**Plan Benefits**

63. The Plan required both employer and employee contributions on behalf of each covered employee throughout the relevant time period.

64. In exchange for these contributions, the covered employee is entitled to retirement benefits. An employee attaining age 60 with at least 5 years of service has the option of retiring on a "normal pension." An employee attaining age 55 with at least 9 years of service has the option of retiring on an "early retirement pension" with the monthly benefit reduced by a fixed percentage for each month the retiree's age precedes 60. If an employee has sufficient years of service but has not reached the age of pension eligibility, that employee has a vested right to receive a pension upon reaching the age of eligibility.

65. The monthly benefit is calculated as a percentage of the retiree's "final average salary," with the retiree entitled to a greater percentage of that salary for each year of service.

66. The Plan has included a widow and widowers benefit since the Training Fund entered into a participation agreement with the Plan. If the Participant dies before age 55, this benefit is determined as if the Participant were 55. In relevant part, this benefit provides 50% of the benefit to which the decedent would have been entitled. If the decedent was a pensioner, the benefit is reduced by 1% for each year the widow or widower was younger than the decedent.

67. Effective for participants who retired after January 1, 1993, the Plan added two "Joint and Survivorship Option[s]" which a pensioner may elect at the time they are entitled to apply for an immediate pension. The first, 75% option, provides 96.6% of the normal pension during the pensioner's lifetime, and a survivorship benefit of 75% of that reduced pension

amount. The second, 100% option, provides 93.4% of the normal pension during the pensioner's lifetime, and a survivorship benefit of 100% of the reduced pension. Under either percentage option, the initial reduction in the monthly benefit may be adjusted from the 96.6% and 93.4% baselines based upon any difference in age between the pensioner and spouse.

68. Effective for participants working in employment covered by the Plan after January 1, 1993, the Plan added two "Alternative Preretirement Surviving Spouse Benefit[s]." Either of these options must be selected, in relevant part, by the later of six months of the commencement of participation in the plan or 9 months of the addition of these benefits to the plan. The participant selects either a 75% or 100% option, which indicates the percentage of the participant's monthly benefit that the surviving spouse would receive. The value of the participant's monthly benefit is permanently reduced by varying percentage depending upon the age of the participant at election and the ultimate age of death, with a greater percentage reduction for the 100% option compared with the 75% option.

**Trustees of the Training Fund Used a Sham CBA to Deny and Conceal from Training Fund Full Time Salaried Officers and Employees Their Status as Plan Participants**

69. Despite the fact that the Plan document required all full time salaried officers and employees be Plan participants, the Plaintiffs' spouses, all full time salaried employees, were never told that they were participants in the Plan. No contributions were made on their behalf.

70. The Plan document defines an "Employee," who must be a participant in the Plan if full time and salaried, to exclude "persons employed by a Local Union who are not included in the Plan and are represented by a union not affiliated with the [IUOE] for the

purpose of collective bargaining provided retirement benefits were the subject of good faith bargaining between such union and the Local Union."

71. The Training Fund and Local 825 as representative of the Training Fund employees entered into a sham "Apprenticeship Training and Retraining Agreement." This "agreement" set forth wages and benefits for Training Fund employees, benefits which did not include participation in the Plan.

72. This three page document is undated and unsigned by the Local 825 Recording-Secretary.

73. The trustees of the Training Fund used the above-described Plan document provision and the sham agreement, held out as a CBA, to deny the Plaintiffs and their spouses their rights as participants in the Plan. The trustees did so even though the sham agreement (1) was purported to be between the Training Fund and the Local, in violation of the Plan document requirement that persons must be represented by a union "not affiliated with the" IUOE in order to be excluded from the "employee" definition and (2) lacked basic indicia of lawful execution.

74. Thus, the trustees of the Training Fund never disclosed, and Plaintiffs' spouses never learned, that they were participants in the Plan.

75. The Trustees knew or should have known the collective bargaining agreement did not bar Training Fund employees from participating in the Plan because the agreement was not executed by a union other than the IUOE.

**Trustees Acknowledged Improper Denials of Benefits and the Bogus Collective Bargaining Agreement**

76. In 2009, several employees of the Training Fund sought benefits from the Plan.

77. The Trustees repeatedly denied their claims for benefits until confronted with the fraudulent collective bargaining agreement.

78. The Trustees eventually relented and awarded benefits to the claimants.

79. The Trustees then contacted some current and former Training Fund employees to apprise them of their eligibility for benefits. The Trustees asserted that receipt of such benefits was conditioned on the pre-payment of employee catch-up contributions.

80. The Plaintiffs, as widows of deceased employees of the Training Fund, received such letters on or about September of 2011.

81. Specifically, the letters stated that to attain an entitlement to benefits, the participant or surviving spouse had to make the full employee contribution for the entire period during which, unbeknownst to the participant, such contributions had been due, plus a 20% assessment "charged to address the fact that these contributions had not been made when the work was originally performed." For survivors, the benefit would be the "Widow's or Widower's Pension," the benefit providing the lowest monthly payment, just 50% of the participant's benefit, of the various survivorship options.

82. The letters did not explain the fraudulent collective bargaining agreement, did not offer interest on unpaid benefits, did not address retroactive benefit payments, and unilaterally imposed the least favorable survivor benefit on the Plaintiffs.

**The Trustees Denied Plaintiffs' Benefit Claims**

83. The Plaintiffs challenged the findings and determinations in the September letters.

84. Initially, the Trustees claimed that they had not made a decision about the Plaintiffs' benefits, even though the September letters documented that the Trustees had made several benefits decisions.

85. The Trustees ultimately conceded in a January 12, 2012 letter that benefit determinations had been made.

86. By letter on May 25, 2012, the Plaintiffs claimed: (1) they were not required to pay the employee contributions; (2) they were eligible for survivor benefits other than the 50% "Widow's or Widower's Pension;" (3) they were entitled to a $100 per month benefit increase provided to all pensioners with a pension effective date prior to 2005; (4) they were entitled to interest on their past due benefits; and (5) they were entitled to retroactive lump sum payments for past benefits owed.

87. On September 6, 2012, by letter, the Plaintiffs were informed that the Appeals Committee of the Board of Trustees of the Plan considered and denied their appeal. The Trustees concluded that Plaintiffs were entitled to benefits only if they paid, upfront, the unpaid employee contributions with a 20% "assessment" and declined to reach any of the other issues raised in Plaintiffs' appeal.

88. This determination was delivered more than ninety days after the Plaintiffs' appeal, in violation of the deadline imposed by the Plan for a ruling on an appeal.

**The Trustees Breached Their Duties**

89. The Trustees are the Plan Administrator and Named Fiduciary for the Plan.

90. As Named Fiduciaries and Plan Administrators, the Trustees had a duty to ensure that all persons eligible to participate in the Plan received summary plan documents and enrollment materials.

91. As Named Fiduciaries and Plan Administrators, the Trustees had a duty to ensure that the Plan complied with participation requirements, including ensuring that eligible employees were not improperly excluded from participating in the Plan so that the Plan would not be disqualified for failing to meet coverage requirements.

92. The Trustees reviewed the limited participation of Training Fund employees on several occasions before 1980.

93. The Trustees knew that all employees of the Training Fund had to be permitted to participate in the Plan if any of its employees were participating in the Plan.

94. The Trustees knew that there was only one exception to full coverage, namely that employees who had been represented by a union other than the IUOE in bargaining for compensation and benefits were not eligible to participate in the Plan.

95. The Trustees accepted an Apprenticeship Training and Retraining Agreement as evidence that most employees of the Training Fund had been represented by a union other than the IUOE in bargaining for compensation and benefits.

96. The Trustees knew the Apprenticeship Training and Retraining Agreement was executed solely by officers of Local 825, acting as both union representative and employer.

97. The Trustees knew the Apprenticeship Training and Retraining Agreement did not satisfy the terms of the Plan for purposes of excluding covered employees from

participating in the Plan because the union purportedly representing the employees was not a union other than the IUOE.

98. The Trustees knowingly used the sham Apprenticeship Training and Retraining Agreement to exclude eligible employees of the Training Fund from participating in the Plan.

99. The Trustees hid the existence of the sham Apprenticeship Training and Retraining Agreement from eligible employees of the Training Fund for decades, beginning in 1980.

**Class Allegations**

100. Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Fed. R. Civ. P. 23(b)(1) and (3).

101. The class is defined as:

> All full time salaried officers and employees of the Training Fund, and their survivors and beneficiaries, from 1976 onward who did not participate in the Plan from 1976 to the present during any period of employment with the Training Fund.

102. The requirements of Rule 23(a) are satisfied for the Class because (1) there at least 142 Training Fund employees upon whose behalf employer contributions were not made; (2) there are common questions as to whether, and under what terms, these employees are entitled to Plan benefits and whether and to what extent the Trustees breached their duties under ERISA; (3) the claims of the named plaintiffs are representative of the class; and (4) named plaintiffs with counsel will fairly and adequately protect the interests of the class.

103. The requirements of Rule 23(b)(1) are satisfied because inconsistent adjudications with respect to individual class members would establish incompatible standards of conduct for the Trustees of the Plan.

104. The requirements of Rule 23(b)(3) are satisfied because questions of law or fact common to class members, including questions as to whether, and under what terms, the class members are entitled to Plan benefits, predominate over any individual questions and a class action is superior for fairly and efficiently adjudicating the controversy because this class action presents little management difficulty and will require less resources than numerous individual adjudications of the same issue.

**COUNT 1**
**ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) – Claim for Benefits**

105. Named Plaintiffs, on behalf of the proposed class, incorporate the preceding paragraphs by reference.

106. The Plan requires that all full time salaried officers and employees be participants in the Plan.

107. All full time salaried officers and employees of the Training Fund were not, however, allowed to participate in the Plan. Beginning in March of 1976, only a minority of Training Fund full time employees were allowed to participate.

108. The proposed class of full time salaried officers and employees of the Training Fund are therefore entitled to participate in the Plan and receive the benefits due to Plan participants.

109. The proposed class members have been denied their benefits due under the Plan.

**COUNT 2**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) – Breach of Duty**

110. Named Plaintiffs, on behalf of the proposed class, incorporate the preceding paragraphs by reference.

111. The Trustees served as Named Fiduciaries and Plan Administrators for the Plan.

112. The Trustees knew that employees of the Training Fund had been wrongfully excluded from participating in the Plan since at least 1976.

113. The Trustees knowingly used a sham collective bargaining agreement to exclude employees of the Training Fund from participating in the Plan.

114. Since 1980, the Trustees concealed the existence of the sham collective bargaining agreement and eligibility for participation in the Plan from employees of the Training Fund.

115. Plaintiffs plead Count 2 in the alternative in the event that complete relief is not available under Count 1.

**WHEREFORE**, named Plaintiffs on their own behalf and on behalf of all others similarly situated respectfully request the following relief:

(a) The Court enjoin the Plan from refusing to pay the benefits owed to full time salaried officers and employees of the Training Fund;

(b) A declaration that the Plan is in breach of its obligations under ERISA;

(c) A judgment against the Plan in the sum of the past benefits owed, including interest on the past due benefits for those class members who have already been paid the lump sum of those benefits but without interest;

(d) A judgment that the members of the Board of Trustees breached their fiduciary duties to Plaintiffs;

(e) Prejudgment and postjudgment interest;

(f) Reasonably attorneys' fees and the costs of this litigation; and

(g) Such other relief as this Court deems equitable and just.

**Jury Demand**

Plaintiff hereby demands a jury on all issues so triable.

Dated: November 16, 2012.

Gregory Y. Porter (D.C. Bar No. 458603)
BAILEY & GLASSER, LLP
910 17th Street, NW
Suite 800
Washington, DC 20006
Tel: 202-463-2101
Fax: 202-463-2103
gporter@baileyglasser.com

Attorney for Plaintiffs