# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BARBARA HAINES, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 12-1870 (RMC) |
| THE GENERAL PENSION PLAN OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION

Barbara Haines, Dorothy Loeven, and Kim Spearman (Plaintiffs) are the widows of former employees of International Union of Operating Engineers (IUOE) Local 825 Training Fund. They brought this suit, on behalf of themselves and those similarly situated, against the General Pension Plan of IUOE and numerous Trustees,[1] who are the Plan's fiduciaries and administrators. Plaintiffs assert a claim for benefits under the Plan as well as a claim for breach of fiduciary duty, and the General Pension Plan of IUOE and the Trustees (collectively, Defendants) filed a counterclaim. Defendants filed a motion for partial dismissal, seeking dismissal of Plaintiffs' claim for benefits. Plaintiffs move to dismiss the counterclaim. As explained below, both motions will be granted.

---

[1] The Trustees are Christopher Hanley, Rodger Kaminska, William Cagney, Kenneth Estabrooks, Robert Heenan, Brian Hickey, Mark Holliday, James Kunz, Louis Rasetta, Bruce Tavin, Lionel Gindorf, Larry Johnson, Art Viat, James O'Gary, Peter Babin III, Sam Hart, Alan Tarpley, Michael Hach, Allen Bowering, Jan Pelroy, Bruce Ashman.

# I. FACTS

Plaintiffs' spouses were employees of IUOE Local 825 Training Fund (Training Fund), a trust fund that provides educational services to operating engineers in New Jersey and New York. Ms. Haines' husband, Emerson Haines, was employed by the Training Fund from approximately 1970 to March 1992 when he died. Ms. Loeven's husband, Edward Loeven was so employed from 1980 to May 1994; he died in 1999. Ms. Spearman's husband, Robert Spearman, was so employed from 1992 to November 1997; he died in 2009. Under the terms of a March 1980 Participation Agreement, the Training Fund participated in the General Pension Plan of IUOE (Plan), *see* Am. Compl. [Dkt. 33] ¶ 61, a pension fund organized under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq*.

The Plan is governed by, among other things, its Plan of Benefits, which requires both the employer and the employee to make contributions to the Plan throughout the relevant time period. Am. Compl. ¶ 63. Plaintiffs acknowledge that "[i]n exchange for these contributions, the covered employee is entitled to retirement benefits." *Id*. ¶ 64. In other words, both the Training Fund and Plaintiffs' spouses were required to make contributions to the Plan to obtain coverage. However, the Amended Complaint alleges that no contributions were ever made to the Plan by Plaintiffs' spouses or by the Training Fund on their behalf. *Id*. ¶¶ 9, 69. The Plan includes a widow and widowers benefit and various other survivor benefit options. *Id*. ¶¶ 66-68. Plaintiffs contend that their spouses were qualified to participate in the Plan but Defendants did not inform them of their eligibility for benefits. *Id*. ¶ 69.

The Plan excludes from the definition of eligible "Employee," "persons employed by a Local Union who are not included in the Plan and are represented by a union not affiliated with [IUOE] for the purpose of collective bargaining[,] provided retirement benefits were the

2

subject of good faith bargaining between such union and the Local Union." *Id*. ¶ 70. Plaintiffs claim that the Training Fund and IUOE Local 825 entered into a sham collective bargaining agreement in order to come within the exclusion and thereby deny Training Fund employees, such as Plaintiffs' deceased spouses, the right to participate in the Plan.

In September 2011, the Trustees sent a letter to Plaintiffs indicating that they could obtain a "widow's pension" under the Plan[2] if they made full contributions to the Plan and paid a 20% assessment to make up for the lateness of such payments. *Id*. ¶¶ 80-81. Plaintiffs challenged the September letter asserting, *inter alia,* that they are not required to pay contributions, that they are entitled to greater benefits than those provided by the widow's pension option, and that they are entitled to past due benefits, with interest. The Trustees rejected Plaintiffs' claims as did the Trustee appeals committee.

The Amended Complaint advances two counts. Count I claims Plaintiffs are entitled to pension benefits under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Am. Compl. ¶¶ 94-98. Count II claims breach of fiduciary duty under ERISA, 29 U.S.C. § 1132(a)(3), based on the Trustees' concealment of Plaintiffs' right to participate in, and receive benefits from, the Plan. Am. Compl. ¶¶ 99-103. Plaintiffs seek judgment in the sum of the past benefits owed as well as equitable relief, including the right to participate in the Plan by selecting any one of the survivor options and forgiveness of the requirement that they pay contributions. *Id*. at 16 (Prayer for Relief). Defendants counterclaimed, also advancing two counts: Count I,

---

[2] A widow's pension provides the lowest monthly payment of the survivor options listed in the Plan. The September 2011 letter from the Trustees did not offer any other option.

seeking relief under ERISA, 29 U.S.C. 1132(a)(3), and Count II, seeking relief under a theory of undue enrichment. Ans. & Counterclm. [Dkt. 41].[3]

Defendants move to dismiss Count I of the Amended Complaint for failure to state a claim. Plaintiffs move to dismiss both counts of the Counterclaim for two reasons— (1) failure to state a claim and (2) the Court lacks subject matter jurisdiction because Defendants have no standing to bring the Counterclaim.

## II. LEGAL STANDARD

### A. Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The facts alleged "must be enough to raise a right to relief above the speculative level," *id.*, and the complaint must state a claim for relief that is "plausible on its face." *Id.* at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action,

---
[3] The Answer (cited herein as "Ans.") consists of ¶¶ 1-115 at Docket 41, pages 1-17; the Counterclaim (cited herein as "Counterclm.") consists of ¶¶ 1-29 at Docket 41, pages 18-23).

supported by mere conclusory statements, do not suffice." *Id.* In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted). Ordinarily when a court relies on matters outside the pleadings, a motion to dismiss must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). However, when a complaint centers on plan benefits, the key plan documents are properly considered without converting the motion to dismiss into one for summary judgment. *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012).

### B. Lack of Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing a motion under Rule 12(b)(1), a court must construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the [c]ourt accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

A court may consider materials outside the pleadings to determine its jurisdiction. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of

demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (internal citations omitted)).

### III. ANALYSIS

#### A. Claim for Benefits

ERISA specifies that a participant or beneficiary may bring a claim "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "When someone raises a [§ 1132(a)(1)(B)] claim, he or she is essentially asserting his or her contractual rights under an employee benefit plan." *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir. 1992). Benefits must be paid in accordance with the documents and instruments that govern the plan. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009). In other words, to recover plan benefits under § 1132(a)(1)(B), a participant or beneficiary "must first qualify for the benefits provided in that plan." *Tolle*, 977 F.2d at 1134.

An allegation that trustees failed to notify an employee of his right to participate in a benefits plan does not state a claim for benefits under § 1132(a)(1)(B) because a failure to notify does not constitute a breach of the express terms of the contract, *i.e.* the plan. For example, in *Olivo v. Elky*, 646 F. Supp. 2d 95, 99 (D.D.C. 2009), plaintiffs brought a claim for benefits under § 1132(a)(1)(B), alleging that they were entitled to enroll in an employer pension plan but the defendants had failed to notify them of their eligibility. The district court dismissed the claim for benefits because it did not allege a breach of contract. *Id*. at 99; *see also Yoon v. Fordham Univ. Faculty*, Civ. No. 99-11042, 2004 WL 30119500, *8 (S.D.N.Y. Dec. 29, 2004)

6

(holding that a plaintiff cannot maintain a suit under § 1132(a)(1)(B) based on a claim for past due contributions never made to his account), *aff'd*, 173 F. App'x 936, 940 (2d Cir. 2006).

The Plan at issue here required employees to make contributions as a condition precedent to obtaining benefits. The requirement that employees make contributions was mandated by the express terms of the contract, the Plan, as follows: "[g]enerally, a Participant earns a Month of Service for each month he is a Full-Time Salaried Officer or Employee of a Local Union, receives a Salary from the Local Union, *and makes contributions to the Plan*." Mot. to Dismiss [Dkt. 43], App. at 006 (Summary Plan Description (SPD) 1976 (emphasis added)); *see also id.*, App. 017 (SPD for 1986) (identical); App. 026 (SPD for 1989) (identical).[4] The Plan also set forth contribution amounts. For example, the 1976 Plan provided that "[e]ffective January 1, 1976, employee contributions to the Fund are 4% of the first $4,200 of annual salary and 5% of the remainder, to a maximum annual Salary of $35,000." *Id.*, App. 004; *see also id.*, App. 015 (SPD for 1986 containing similar provision); *id.*, App. 024 (SPD for 1989 containing similar provision).

In sum, at the time Plaintiffs' husbands were employed by the Training Fund, the express terms of the Plan required that an employee make contributions in order to receive benefits. Plaintiffs acknowledge this fact, as revealed in their allegation that "[i]n exchange for these contributions, the covered employee is entitled to retirement benefits." Am. Compl. ¶ 64. Plaintiffs' spouses did not make contributions to the Plan and therefore the condition precedent to receiving benefits was never satisfied. Plaintiffs have not stated a claim for benefits and may not recover benefits under the Plan because their spouses did not contribute to the Plan and thus they do not qualify for the benefits provided in the Plan. *See Tolle*, 977 F.2d at 1134.

---

[4] The Summary Plan Descriptions of the Plans dated 1976, 1986, and 1989 are applicable here because they cover the period that Plaintiffs' husbands were employed by the Training Fund.

Plaintiffs argue that the Trustees have "already told Plaintiffs that they have rights under the terms of the Plan, including the right to pay contributions and receive benefits." Opp'n [Dkt. 44] at 10 (citing Am. Compl. ¶ 87). In a September 6, 2012 letter, the Trustees allegedly indicated that Plaintiffs "were entitled to benefits only if they paid, upfront, the unpaid contributions with a 20% assessment.'" Am. Compl. ¶ 87. Plaintiffs misconstrue the Trustees' offer to pay certain benefits in exchange for payment from Plaintiffs as constituting an amendment of the Plan. The Court must interpret the Plan according to the documents that comprise the Plan, *see Kennedy*, 555 U.S. at 300, and under those terms, benefits are payable only in exchange for contributions. Because no contributions were made, Plaintiffs are not entitled to benefits under the Plan. Count I of the Amended Complain, the claim for Plan benefits under § 1132(a)(1)(B), must be dismissed.[5]

**B. Counterclaim**

Plaintiffs move to dismiss Defendants' Counterclaim (1) due to Defendants' lack of standing to bring the claims alleged and (2) failure to state a claim. Standing to invoke the jurisdiction of federal courts under Article III of the Constitution requires a plaintiff to show that:

> (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

---

[5] Plaintiffs also insist they "must" have a right to benefits under the Plan or else the Trustees' offer to accept post due contributions plus a penalty in exchange for benefits would necessarily constitute a breach of fiduciary duty. They cite no facts or law in support of this claim.

8

The Counterclaim alleges only a speculative injury, as revealed in the conditional language it uses. It is prefaced with the statement:

> The Counterclaim is asserted out of an abundance of caution in light of the employee contributions and other amounts that *would* be owed to the General Pension Plan *in the event that* the Court grants relief to Plaintiffs.

Counterclm. ¶ 18 (emphasis added). Count I alleges that if the Court grants pension benefits to Plaintiffs without requiring them to pay contributions, such relief "*would* violate the terms of the [Plan]" in contravention of § 1132(a)(3) of ERISA. *Id*. ¶ 20 (emphasis added). Count II alleges that such relief "*would* enrich" Plaintiffs, *id*. ¶ 23 (emphasis added), and "*would be* unjust as it would be contrary to the terms of the [Plan] . . . and *would be* a detriment to Defendants," *id*. ¶ 24 (emphasis added). Neither Count of the Counterclaim alleges an actual or imminent injury in fact that is not conjectural or hypothetical, and thus Defendants lack standing. *See Friends of the Earth*, 528 U.S. at 180.

Even if Defendants had standing, the Court would dismiss the Counterclaim for failure to state a claim. Count I attempts to allege a violation of § 1132(a)(3) of ERISA, which provides that a participant, beneficiary, or fiduciary may bring suit to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations . . . ." 29 U.S.C. § 1132(a)(3). To state a claim under this provision, Defendants (who are fiduciaries) must allege that Plaintiffs have taken an action that violates a provision of the Plan. *Id.*

Defendants make the conditional and illogical argument that *if the Court* awards benefits and *if the Court* does not require Plaintiffs to pay contributions, *then Plaintiffs will have taken an action* in violation of the Plan. However, if events were to occur as Defendants

9

suppose, it would be the Court and not the Plaintiffs acting. An ERISA claim against the Court is specious.

Count II of the Counterclaim attempts to allege unjust enrichment. To state such a claim, Defendants must allege that: (1) Defendants conferred a benefit on Plaintiffs; (2) Plaintiffs retained the benefit; and (3) Plaintiffs' retention of the benefit is unjust under the circumstances. *See Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111 (D.D.C. 2010) (applying D.C. common law and citing *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)). Inasmuch as Defendants have not conferred any benefit on Plaintiffs, Defendants have not alleged even the first element of an unjust enrichment claim. Count II of the Counterclaim is, thus, also specious.

Defendants contend that they are entitled to plead alternatively and hypothetically and that the Counterclaim properly seeks to require Plaintiffs to pay contributions in the event that the Court awards benefits to Plaintiffs. Defendants mistake a defense for a counterclaim. Defendants can argue as a defense that any relief granted to Plaintiffs should be limited in equity.[6] Count II of the Counterclaim fails and must be dismissed.

### IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' partial motion to dismiss [Dkt. 43] and Plaintiffs' motion to dismiss the Counterclaim [Dkt. 47]. Accordingly, Count I of the Amended Complaint and the entire Counterclaim will be dismissed. Count II of

---

[6] Defendants contend that Plaintiffs should be required to pay for any benefits they receive and that benefits from the Plan should be offset by amounts Plaintiffs have received from other pension plans; accordingly, Defendants have asserted affirmative defenses of estoppel, waiver, accord and satisfaction, and offset. Ans. [Dkt. 41] ¶ 114. The Court only notes these defenses, but does not address their merits.

the Amended Complaint, alleging that the Trustees breached their fiduciary duty, remains.  A memorializing Order accompanies this Opinion.

Date: September 4, 2013
            /s/
ROSEMARY M. COLLYER
U.S. District Judge